Mr. Chief Justice TANEY
 

 delivered the opinion of the court.
 

 The court have considered the motion made in this case to dismiss the writ of error for want of jurisdiction. From the mode of judicial proceeding adopted in Texas, the motion presents a new question, and one that is not free from difficulty.
 

 The suit is not brought in any of the forms of action known to the common law. It is instituted by petition; and the plaintiff in the court below seeks to recover four slaves,-which he alleges are his property, and are detained from him by the de
 
 *128
 
 fendant. The value of each slave is averred separately in the petition, the whole amounting to two thousand seven hundred dollars. The verdict of the jury is as follows: —
 

 “We the jury find for the plaintiff twelve hundred dollars, the Value of the negro slaves in suit, with six and a quarter cents damages.”
 

 And the record states, that thereupon the plaintiff released the judgment for twelve hundred dollars in open court; and the court adjudged that he recover of the defendant the said slaves and the damages assessed by the jury, and his costs.
 

 This proceeding appears to be a substitute for the common law action of detinue, and resembles it in many respects. In that action, if the jury find that the property belongs to • the plaintiff, and is detained from him by the defendant, they ought to find at the same time the value of each separate article in dispute, and the judgment of the court is that the plaintiff recover the property, or the value thereof as • found by the jury, provided he cannot obtain possession-of the property, together with his damages and costs. Upon such a judgment a writ of error certainly would not lie, when the value assessed by the jury was less than two' thousand dollars. For the value of the property in dispute would be fixed'by the verdict and the judgment of the court, and both parties would be bound by it.
 

 But in the case' before us, the finding of the - jury and the judgment of the court differ from the proceedings in an action of detinue. The gross value of the four slaves is found by the jury, and not the separate value of each of them. 'And the value as found forms no part of the judgment of the court. The plaintiff was permitted to release it, -— and although it is said in the record that he released
 
 the judgment
 
 for this sum, yet it appears that no judgment was rendered for it, and that it was released
 
 before any was
 
 given.
 

 The judgment of the District Court therefore décides nothing more than the right to the property specified in the
 
 petition; and
 
 whether- that judgment is erroneous or not is all that this court can examine into upon the writ of error. The sum which the plaintiff below (who is the defendant in error here) is entitled to recover, if the property is placed beyond his reach and he fails to. obtain possession of it, can form no part of the judgment of this court. The only matter in controversy is the four slaves ; and their actual value, whatever it may be, is the value of the matter in dispute.
 

 Now if the. judgment of the District Court had been for. the defendant, the plaintiff would evidently have been entitled to 'maintain a writ of error. And as he sues for the specific prop
 
 *129
 
 erty, and avers the value to be $2,700, he would have been entitled to the writ, even if he had laid his damages for the detention below $ 2,000. For the averment of value when he sues for property shows the value of the thing in controversy, as much as the averment of debt or damage, when he sues for money. And when he has rejected the value found by the jury, and refused .a judgment for it, and is not bound by that finding, can he bind the defendant to it, and thereby deprive him of his' writ of error, upon the ground that the property in dispute is .not worth $ 2,000?
 

 This is-the question upon the motion before us.
 

 In cases where the plaintiff sues for- money, and claims in his pleadings a larger sum than $ 2,000, and obtains a judgment for a smaller amount, the sum for which the judgment is rendered is the only matter in controversy,- when the defendant brings the writ of error. Because, if the plaintiff rests satisfied with it, and takes no step to reverse it, he is bound by it as well as the defendant-. Both parties, therefore, stand upon an equal footing in that respect. But if the plaintiff brings the writ of error upon the ground that he is entitled to more than the judgment was rendered for, then his averment in his declaration shows the amount he claimed; and as that claim is the matter for which he brings suit, he is entitled to the writ of error if that claim appears to be large enough to give jurisdiction to this court. These principles have been settled in this court by the cases referred to in the argument.
 

 In the case before us, the plaintiff avers in his petition that the slaves for which the suit is brought are worth $2,700. The right to these slaves must be the only matter in controversy here, whether the writ of error is .sued out by the plaintiff or the defendant. If by the plaintiff, he would undoubtedly be entitled to it, upon the ground that the property in dispute, and which he is seeking to recover in this suit, is claimed to be worth more than $ 2,000 ; and he would be entitled, under the decisions of this court, to rely on the averment in his petition, to show that the amount in value of the slaves he claimed is sufficient to give jurisdiction to this court. Can he, then, be permitted to deny here the truth of his own averment, when precisely the same thing — the same property — is the matter in controversy upon the writ of error brought by the defendant? We think not. And as by his release he prevented a judgment from being entered, fixing the value, as between these parties in this suit, at $ 1,200, the averment in his petition must be regarded .as determining the amount in controversy upon a writ of error brought by either plaintiff or defend
 
 *130
 
 ant. Consequently, this court has jurisdiction upon this writ, and the motion to dismiss it must be overruled. '
 

 Mr. Justice DANIEL.
 

 In the opinion of the court pronounced in this cause I am unable to concur, regarding that opinion as reconcilable vfith neither the act of Congress (Judiciary Act, § 22) regulating the jurisdiction of this court, nor with the fundamental rules of pleading and evidence, but as in contravention of both. ' This cause is in effect, and in form except with regard to the frame of the petition, corresponding with the declaration at common law, in all its details and proceedings, an action of detinue for the recovery of four slaves. In every such action, the authorities tell us that it is requisite to describe the property demanded with so much certainty, that it may be delivered up
 
 in specie;
 
 and it was ruled by the older cases, that, where the property consisted of several articles, the plaintiff must show the value of each particular article, and not state the aggregate value. Subsequently, however, it has been ruled that the declaration may mention the separate value of each article, or it may state the value in gross; and this appears to be the established doctrine in England at this day. See Com. Dig., tit.
 
 Pleader
 
 (2 X 2). So in 1 Chitty on Pleading, p. 377, it is said, that, “ in actions for injuring or taking away goods or chattels, it is in general necessary that their quality, quantity, or number, and value or price, should be stated ; the assigned reason is, that a former recovery could not else be pleaded in bar to a second action for the same goods; neither could the defendant properly defend himself.” Then with respect to the verdict and judgment, to be rendered in the action of detinue, the law is thus given in Com. Dig., tit.
 
 Pleader
 
 (2 X 12): —“ The judgment against the defendant shall be for the recovery of the thing detained
 
 vel valorem inde
 
 and costs ; and if judgment be upon confession
 
 non sum informatus,
 
 demurrer, &c., a writ of inquiry shall be awarded to inquire of the values. And after judgment, if a
 
 distringas
 
 goes
 
 ad deliberandum
 
 bona, and the defendant does not, the plaintiff shall have damages taxed by the inquest, so that it lies in the defendant’s election to deliver the goods or the value.”
 

 Sir William Blackstone in treating of the action of detinue, Vol. IV. p. 413, thus states the law: — “In detinue, after judgment, the plaintiff shall have a
 
 distringas to
 
 compel the defendant to deliver the goods by repeated distresses of his chattels; and if the defendant still continues obstinate, then (if judgment hath been by default or demurrer) the sheriff shall summon an inqugst to ascertain the value of the goods, and the plaintiff’s
 
 *131
 
 damages (which being so assessed, or by the verdict in case of an issue) shall be levied on the person or goods of the defendant. So that after all, in replevin and detinue, (the only actions for recovering the specific possession of personal chattels,) if the wrong-doer be very perverse, he cannot be compelled to a restitution of the thing taken or detained.” So, too, in Chitty on Pleading, Vol. I. p. 124, it is said, — “The nature of this action requires, that the verdict and judgment be such that a specific remedy may be had for the recovery of the goods detained, or a satisfaction in valué, for each parcel, in case they or either of them cannot be obtained. The judgment is on the alternative, that the plaintiff do recover the goods or the value thereof, if he cannot have the goods themselves.”
 

 The citation of these seemingly trite and familiar principles of law will not be deemed useless, when an application of them, and of the reasons on which they are founded, shall be made to the case under consideration. In the authorities above quoted,, we have disclosed to us the propriety and necessity (resulting from the peculiar character of the remedy) for averring in tfie declaration, and of ascertaining by the verdict and judgment, the value of the property sought; because that value is to become the measure of redress to the plaintiff, in one branch of the alternative, in the evént that the other shall prove fruitless. It is indispensable, therefore, that this measure be ascertained upon legal testimony and solemn investigation before the court, and under its supervising authority, — as indispensable, fully, as that'the title to the property should be so ascertained ; for both enter alike into the redress of the plaintiff, and flow from the same source. His right to the one rests upon the same foundation with his right to the other, and if he had no right to one, he had a right to neither. Nor can' it be said that the measure of the plaintiff’s redress rests mainly in the breast or in the action of the court; on the contrary, it rests rather in the opinion and action of the jury. The court cannot, even with the parties and witnesses before it, determine the value of the property, or the parties’ right thereto. The court, by awarding a new trial, may correct an excess or irregularity of any kind on the part of the jury; but it could have no power to find for either party upon the issue before the jury, nor augment or diminish by one cent the measure of redress established by the jury. If, then, such a power belonged not to the court when in a course of regular judicial inquiry, with the parties and witnesses fully before it, does it not seem strange to contend, that such a power can be exercised collaterally by a different tribunal, neither trying the issue, nor weigh
 
 *132
 
 ing the evidence which the jury had before them, and in the absence of all or any of the circumstances, exercised upon
 
 ex parte
 
 affidavits before the jury, thereby overturning what twelve men upon their oaths, and in regular discharge of their functions, have done, and what the law through them has declared shall be the standard of value ? And for what purpose, it may be asked, is this collateral inquiry to be allowed?- Not, strange as it may seem, to settle any other alternate value of the property, nor to put any estimate upon it at all; but to let in other questions connected with the title, or with some proceedings in the court below, wholly disconnected with the value of the property. But it is said that the plaintiff below has released his right to the damages assessed by the jury, and therefore can no longer enforce them. What of that ? What possible connection can exist between the power of the plaintiff to enforce his judgment, as affected by any act or indiscretion of his own, and the value of the property as assessed by the jury ? Does the release of the estimated value render that value either greater or smaller than it was before ? Possibly this act of the plaintiff may render his power to enforce the verdict and judgment less efficient; but to reason from that consequence to the value of the property as found by the jury, appears to me to be an argument as illogical as any that can be conceived. The estimated value, the true measure settled by the jury, remains unchanged, although it may have been released. The verdict has never been reversed or annulled. Moreover, it may not follow necessarily, that the release of the damages by the plaintiff below vitiates the judgment, or deprives the plaintiff of the power to enforce it; for we find by the authorities that a judgment may be by confession, or
 
 non sum
 
 informatus, or on demurrer, in either of which cases judgment may be entered, and that afterwards, if the defendant will not deliver the property, damages for the value and for the detention may be assessed; and such value, when assessed in the proper,' regular, legal mode, is all for which execution can be had against the person or property of the defendant. But the inquiry is not properly instituted here whether the plaintiff, by error or indiscretion, has lost the power of enforcing his verdict and judgment: the question is purely one of jurisdiction, dependent upon the value of the subjéct, and that value ascertained by all the solemnities, and in the only mode known to the law, — solemnities, as I contend, nowhere to be properly gainsaid. Let it be supposed that.there had been no release of damages or value by the plaintiff below. The principles applicable to the action of this court would be precisely those involved in the case as it now
 
 *133
 
 stands. Then let it be supposed that, after taking jurisdiction upon this collateral inquiry, this court should come to the conclusion. that there was no error'in the proceedings and judgment in the court below. What manner of mandate would be sent to that court ? Would this court, upon its own estimate of the value of the subject founded upon affidavits, and because it had claimed jurisdiction upon such an estimate, order the Circuit Court to augment the damages assessed to the plaintiff below? Could they by so doing open again that which had become
 
 res judicata 1
 
 If they should not do this, they would confessedly have effected a wrong to the plaintiff; and if they should attempt to do so, I desire to know their authority for such a proceeding, and what standard or measure for their mandate they would adopt; they would have repudiated the verdict of a jury and a judgment of the court, and what higher or other standard they would adopt I am at a loss to conceive. In defence of the proceeding permitted in this case, it has been contended that, by the practice of this court, in cases sounding in damages purely, a plaintiff is permitted to confer jurisdiction .on this tribunal by laying his damages at an amount
 
 ad libitum,
 
 sufficient for that purpose. If the practice of this court is to be understood in the latitude in which it is just expressed, that practice must be deemed to be in consonance with neither the letter nor the spirit of the statute. In cases arising
 
 ex contractu
 
 or
 
 quasi ex contractu,
 
 which in their original form and magnitude might fall within the rule laid down by Congress, but which, in the progress of investigation by the application of payments or set-offs, should be brought below the minimum established by law, or in cases of tort, which, from their peculiar character, might also come within the reason of
 
 the
 
 same rule, (though the latter must be regarded as liable to strong doubt,) jurisdiction may be claimed. But if either the practice, or any express annunciation from this court, is to be apprehended as placing it at the option of parties, plaintiffs or defendants, to refer all their contests to this tribunal, however their character may be stamped and ascertained by the decision of the inferior courts, and in contravention of such solemn decisions, given upon full investigation by courts and juries, why then, by the rules or the practice of this court, the act of Congress-is substantially repealed, and the proceedings of the courts below are a mere mockery. The value of the subject of the controversy, as ascertained in the court below, supplies the only safe and uniform rule as to jurisdiction, in cases wherein jurisdiction is dependent on value. My opinion, therefore, is, that it is incompetent to either of the parties, or to this court, in the indirect
 
 *134
 
 and collateral mode, here attempted, and upon evidence entirely dehors and unconnected'■with the record, to impeach or inquire into the verdict and judgment rendered in the District Court of Texas; that such a proceeding is utterly subversive of the act of Congress limiting the right to appeals and writs of error, and equally subversive of the fundamental rule of pleading and of evidence, which establishes undeniable verity in the solemn proceedings of courts acting within the sphere of their jurisdic-; tion, and establishes every fact and every conclusion embraced within the scope of those proceedings.
 

 Order.
 

 On consideration of the motion made by Messrs. Hughes and Howard, on a prior day of the present term of this court, to wit, on Friday, the 25th day of January last past, to dismiss this writ of error for the want of jurisdiction, and of the arguments of counsel thereupon had, as well in support of as against the same, it is now here ordered by this court, that the said motion be, and the same is hereby, overruled.