EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO MATOS MATOS, acusado y apelante.

Número 15973.

*Sometido:* 6 de marzo de 1958. *Resuelto:* 10 de septiembre de 1959.

---

*Luis A. Archilla Laugier,* abogado del apelante; *Hon. Secretario de Justicia Hiram R. Cancio (J. B. Fernández Badillo, Ex-Secretario de Justicia,* en el alegato), *Arturo Estrella, Secretario Auxiliar de Justicia, Alfredo Archilla Guenard* y *Héctor R. Orlandi Gómez, Fiscal* y *Fiscal Auxiliar, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El día 15 de mayo de 1952 el Fiscal formuló una acusación contra Pedro Matos Matos y Fundador Rodríguez Viruet por el delito de Infracción al artículo 192 del Código Penal, (1) consistente en que los referidos acusados Pedro Matos Matos y Fundador Rodríguez Viruet "allá para el día 16 de marzo de 1952 y en Utuado, Puerto Rico, . . . actuando allí y entonces de común acuerdo, ilegal, voluntaria, maliciosa y criminalmente, entorpecieron y estorbaron a los miembros de la Junta de Inscripción del Colegio de Inscripción núm. 3, en el precinto electoral de Utuado, Puerto Rico, en el cumplimiento de sus obligaciones, irrumpiendo y penetrando ilegalmente en dicho colegio cuando faltaban pocos minutos para la 1:00 de la tarde, o sea, cuando ya iba a dar comienzo la inscripción de futuros electores, provocando dichos acusados allí y entonces una fuerte y acalorada discusión, asumiendo una actitud hostil y agresiva, entorpeciendo y estorbando así la labor de la Junta de Inscripción en el cumplimiento de sus obligaciones de dar comienzo la inscripción de futuros electores a la 1:00 de la tarde, creando un desorden como consecuencia de todo lo cual no pudieron ser inscritas varias personas que salieron del local donde estaba legalmente constituida la referida Junta de Inscripción, demorando y paralizando los comienzos del proceso de inscripción por más de media hora".

Los acusados fueron juzgados conjuntamente ante un jurado. Este rindió veredicto absolviendo a Fundador Rodríguez Viruet, pero no logró ponerse de acuerdo sobre un veredicto respecto a Pedro Matos Matos, razón por la cual dicho jurado fue disuelto.

Se le celebró un nuevo juicio a Matos Matos y fue declarado culpable por el jurado que intervino en el mismo, pero

---

(1) El artículo 192 del Código Penal, 33 L.P.R.A. sec. 583, dispone:

"Todo el que de algún modo entorpeciere o estorbare a los miembros de la Junta de Inscripción en el cumplimiento de sus obligaciones, incurrirá en delito grave, y, convicto que fuere, será castigado con pena de presidio por uno a cinco años."

a solicitud del acusado el tribunal ordenó la celebración de un nuevo juicio. Este tercer juicio comenzó a celebrarse ante otro jurado el día 10 de junio de 1954, ostentando la representación del acusado los abogados Francisco M. Susoni Lens y Tomás Torres Cortés, quienes fueron los únicos abogados que intervinieron desde el principio del proceso y hasta el momento en que se retiraron del caso mientras se practicaba la prueba de defensa y como consecuencia de ciertos incidentes surgidos entre ellos y el juez que presidía el tribunal. Los referidos abogados fueron condenados a treinta días de cárcel por desacato y el juez nombró al acusado abogados de oficio para que continuaran representando al acusado.

Trasmitidas las instrucciones, el jurado halló culpable al acusado del delito imputádole y el juez le condenó a sufrir una pena no menor de un año ni mayor de dos años de presidio con trabajos forzados. Contra dicha sentencia el acusado interpuso el presente recurso señalando la comisión de varios errores. En vista del resultado a que llegaremos, será innecesario discutir algunos de ellos.

 Durante el juicio ocurrieron varios incidentes que han motivado otros tantos señalamientos de errores.

Algunos de estos incidentes se relacionan con Fundador Rodríguez Viruet, quien fue el testigo principal del acusado. Mientras el abogado señor Susoni repreguntaba a una testigo de cargo, ocurrió lo siguiente:

"A preguntas del Hon. Juez, declaró:
"P. ¿Usted conoce a Fundador?
"R. Yo lo vi por primera vez aquel día.
"A preguntas del Lcdo. Susoni, declaró:
"P. ¿Usted lo ha vuelto a ver?
"R. Sí, señor.
"P. ¿Ahora mismo lo está viendo?
"R. Sí, señor.
"P. ¿Dónde está él?
"R. Allá está.
"Hon. Juez: ¿Por qué Fundador está en el salón de la Corte si fue ofrecido como testigo?

"Lcdo. Susoni: Pido a su señoría excusa, porque he estado de espalda y ahora que su señoría ha hecho esa manifestación sé que está aquí, y yo le dí la nota al señor Márshal que tan pronto llegaran los testigos los pusiera bajo las órdenes de la Corte.

"Hon. Juez: Él no puede preguntarle el nombre a las personas, a todas las personas que entran al salón, no puede prohibirle la entrada al salón. *Eso depende del propósito y de la moral de la persona que viene ahí como testigo. Él ha estado en otros procesos y él sabe que los testigos no van al salón para ver lo que declaran los otros testigos y debe saber la responsabilidad que tiene como tal testigo.*

"Lcdo. Torres Cortés: Nosotros vamos a tomar excepción de las manifestaciones de su señoría.

"Hon. Juez: Está tomada la excepción. Ahora no me la puede fundamentar con el jurado ahí.

"Márshal: Yo a los testigos no los conozco. Ahora si...

"Hon. Juez: No hay ninguna explicación del Márshal. El señor entró ahí. El abogado ha pedido una excusa y este hombre debe ponerse bajo las reglas de la Corte.

"Fundador Rodríguez Viruet: Señor Juez, yo...

"Hon. Juez: Usted no puede hablar e interrumpir los trabajos de la Corte. La Corte le impone cinco dólares de multa o cinco días de cárcel. Márshal, es de usted el acusado. Las damas y caballeros del jurado se van a retirar por un momento en lo que levanta una cuestión de derecho el señor letrado..." (Bastardillas nuestras.) (T. E. págs. 112 a 114, primera pieza.)

Cuando llegó el turno de la defensa para presentar su prueba, llamó al testigo Fundador Rodríguez Viruet. Terminado el examen directo de este testigo y mientras el Fiscal le repreguntaba ocurrió lo siguiente, según el récord:

"P. ¿Vicente Juan Medina está aquí como testigo bajo las reglas de la Corte?

"R. Sí, señor.

"P. ¿Es la misma persona que usted ha manifestado que vió en dos ocasiones el día 16 de marzo de 1952, primera ocasión, por la mañana en el comité de su Partido, segunda ocasión, después de las cuatro de la tarde?

"R. Sí señor.

"P. ¿Y ese señor que usted vió en dos ocasiones ese día 16

de marzo es la persona que está bajo las reglas de la Corte como testigo de defensa, o es alguna otra persona?

"R. Es la misma persona porque yo estoy completamente normal.

"P. ¿Señor Fundador Viruet...?

"R. Rodríguez Viruet, me hace el favor.

"Hon. Juez: *Señor, tenga la bondad de dejar las manos quietas sin hacer esa indicación con la mano, porque no es la forma de conducirse en la Corte.*

"Lcdo. Susoni: Nosotros queremos tomar excepción a las manifestaciones de la Corte.

"Hon. Juez: *Hágase constar en récord que el testigo ha levantado la mano izquierda y con el índice ha señalado en forma agria, amenazante al Fiscal, diciéndole que ese no es su apellido, que la Corte ha tenido que llamarle la atención al testigo como se la llama a cualquier persona que no se comporte bien ante su sala.*

"Lcdo. Susoni: Tomamos excepción respetuosamente." (Bastardillas nuestras.) (T. E., págs. 284 a 285, Primera Pieza.)

El juez intervino con frecuencia, interrogando a los testigos en forma perjudicial al acusado y que ya en otros casos hemos censurado. Veamos, por ejemplo, el siguiente incidente. Mientras declaraba el testigo de defensa William Pérez, el Juez interrogó al testigo, alzando la voz, diz que para orientar al testigo, e imputándole que se iba por la orilla y no contestaba sus preguntas. Los abogados protestaron de la actitud del Juez y se anotaron una excepción, lo que dió lugar a otro incidente más entre el magistrado y dichos abogados. Volvamos al récord.

"A preguntas del Hon. Juez, declaró:

"P. ¿Por la causa de qué?

"R. De las personas que habían en el local, el movimiento de las cosas, la misma aglomeración, la misma gente que estaba pegada de las mesas.

"P. ¿Y sobre la discusión que hubo?

"R. En ese momento no existía.

"P. ¿En el momento que hubo esa discusión existió?

"R. Pero fue antes de la una.

"P. ¿Entre quiénes fue esa discusión? ¿La discusión que

usted dice ahí, dice el Fiscal que usted dice?

"R. Fue la cuestión que hubo, porque el señor Matos me llenó la petición, pero entonces él se había salido.

"P. ¿Con quién discutió él? ¿Con usted?

"R. No, señor.

"R. *¿Con quién discutía? ¿Yo le pregunto con quién discutió Matos, si Matos discutió? No se me vaya por la orilla. Tenga la bondad de contestar.*

"R. *Tengo que explicar.*

"P. *¿Con quién fue la discusión de Matos, con quién?*

"Lcdo. Susoni: ¿Me perdonaría el señor Magistrado?

"Hon. Juez: Tengan la bondad los abogados de no interrumpir al Magistrado.

"P. *¿Con quién discutía Matos, le pregunto yo que aclare? Después hace las aclaraciones.*

"R. Yo no recuerdo.

"P. ¿No recuerda con quién discutía?

"R. No, señor.

"Lcdo. Susoni: Queremos tomar excepción a la forma en que el Magistrado se ha conducido en la repregunta. Entendemos que es intimidar al testigo en forma tal que le hace imposible poder cumplir la forma en que debe evacuar un testimonio normal, sereno y tranquilo. Por el récord aparece que en ningún momento él le ha faltado el respeto al Magistrado. Sin embargo, en la forma alta, impetuosa que lo ha hecho su señoría, tiende a amedrentar aquellas personas que normalmente no están acostumbradas a estos procesos.

"Hon. Juez: Para el récord, *quiero decir que el compañero Susoni se ha salido de una realidad, de la verdad, donde deben situarse los abogados y los caballeros, imputando que el Juez ha querido intimidar al testigo. El Juez, si ha alzado la voz ha sido para orientar al testigo y preguntarle con quién discutía Pedro Matos Matos.* Yo lamento que el compañero Susoni se haya separado de esa manera tan lamentable de los hechos, porque yo soy incapaz de intimidar a nadie y *mucho menos cuando estoy presidiendo una Corte; lo que quiero es que venga a labios de las personas toda la verdad aunque afecte o beneficie a un lado o afecte o beneficie a otro.*

"Lcdo. Susoni Lens: Tomamos excepción respetuosamente." (Bastardillas nuestras.) (T. E., págs. 303 a 305, Primera Pieza.)

Además, durante el juicio el Juez hizo comentarios sobre la conducta de los abogados del acusado, de efecto perjudicial para la causa de éste.

En una ocasión el Juez, al referirse a una solicitud que habían hecho los abogados de la defensa para que se transcribieran las notas de un juicio anterior, calificó la solicitud de los abogados "como una táctica dilatoria". Al tomar la defensa excepción de las palabras del Juez, éste, dirigiéndose al jurado, le dijo que "no tienen que juzgar los casos por la honestidad o deshonestidad o por la moral baja o la moral alta de los representantes del acusado". Al oir estas manifestaciones el abogado Torres Cortés se levantó de su asiento para tomar excepción. El Juez le ordenó que se sentara y le amenazó de castigarlo por desacato. Ordenó entonces que se retirara el jurado y procedió a condenar por desacato al abogado Torres Cortés. (²)

Las manifestaciones del Juez sobre la honestidad o deshonestidad o la moral alta o la moral baja de los abogados del acusado, hay que interpretarlas a base de lo que ya antes había dicho el Juez al calificar de "táctica dilatoria" la conducta de dichos abogados.

Posteriormente cuando el abogado Sr. Susoni tomó excepción por la forma en que el Juez había repreguntado al testigo William Pérez, el Juez manifestó ante el jurado que "el compañero Susoni se ha salido de una realidad, de la verdad, donde deben situarse los abogados y los caballeros, imputando que el Juez ha querido intimidar al testigo".

El Juez también culpó al acusado y a los nuevos abogados de oficio de no encontrarse debidamente preparados para dirigir el interrogatorio directo del propio acusado. El abogado Sr. Feliú Pesquera hizo al acusado una pregunta de carácter general y al oponerse el fiscal, el abogado explicó que hacía

---

(²) Como después que los abogados Susoni y Torres Cortés se retiraron del caso el Juez no mantuvo al jurado bajo la custodia del alguacil, es improbable que el jurado no se enterara de la condena por desacato impuesta a Torres Cortés.

la pregunta en esa forma porque no había oído declarar a los testigos del Estado. A eso contestó el Juez que esa era "Una situación acarreada por la propia parte, ..." Al insistir el abogado en que tampoco había podido leer todo el récord taquígrafico del juicio, el Juez le contestó: "Eso es culpa del mismo abogado, y de los demás, si no ha podido prepararse, porque lo han tenido desde hace varios días".

Convenimos en que muchos de estos incidentes aisladamente no serían motivo suficiente para anular un veredicto. Sin embargo, el efecto acumulativo de todos, así como el de otros de menos importancia que no hemos relatado, tendieron a prejuiciar la causa del acusado ante el jurado y le privaron de un juicio justo e imparcial y del ambiente de calma judicial que debe prevalecer en todo proceso criminal.

 Toda persona acusada de la comisión de un delito público tiene un derecho absoluto a un juicio justo e imparcial. Esto significa, según la doctrina jurisprudencial, que el acusado tiene derecho a que el juicio se desarrolle en una atmósfera de calma judicial ante un juez imparcial y un jurado libre de prejuicios. La responsabilidad de hacer valer este derecho necesariamente descansa en el juez que preside la vista. Este debe actuar con la mayor cautela a fin de evitar que por cualquiera de sus actos, se anule el derecho del acusado a un juicio justo e imparcial. *State* v. *Gossett*, 108 S.E. 290. El juez que preside una vista criminal siempre debe actuar en tal forma que dé la impresión al jurado de que él es imparcial y que no favorece a algunas de las partes. *Pueblo* v. *Díaz*, 74 D.P.R. 375, 394. Ocupa el juez una posición privilegiada. El jurado siente gran respeto por su opinión y es fácilmente influenciado por cualquier sugestión que venga de él. Como consecuencia, el juez debe suprimir o evitar cualquier conducta o lenguaje que tienda a desacreditar o perjudicar al acusado o a su causa ante el jurado. *State* v. *Simpson*, 64 S.E.2d 568; *State* v. *Bryant*, 126 S.E. 107. Una actitud hostil del juez hacia el acusado o sus tes-

tigos se presta a influir en el veredicto del jurado. *People* v. *Marino*, 111 N.E.2d 534, 537. Sin embargo, la mera posibilidad de que un acusado haya podido sufrir perjuicio a consecuencia de la conducta o del lenguaje usado por el juez, no es suficiente para anular un veredicto condenatorio.(³) El criterio para determinar si los comentarios impropios del juez han privado o no al acusado de su derecho a un juicio justo e imparcial, es el efecto que probablemente ha causado en el jurado el lenguaje usado por el juez. *Pueblo* v. *Bartolomei*, 70 D.P.R. 698. "Esto es así, se dice en *State* v. *Carter*, 65 S.E.2d 9, págs. 10 y 11, porque 'La palabra no es un cristal transparente e inmutable sino que es la epidermis de un pensamiento vivo y puede variar grandemente en color y contenido de acuerdo con las circunstancias y el momento en que se use. *Towne* v. *Eisner*, 245 U.S. 418, 38 S.Ct. 148, 159, 62 L. ed. 372'."

■ Consideradas todas las circunstancias de este caso, forzoso es concluir que las manifestaciones y comentarios del Juez que presidió la vista sobre la reputación de los testigos del acusado y de sus abogados defensores, tuvieron el efecto probable de influir en el veredicto adverso del jurado. Lo mismo podemos decir en cuanto a la forma en que el Juez interrogó a algunos de los testigos de la defensa. Véanse *Pueblo* v. *Acevedo*, 35 D.P.R. 966, 970 y *Pueblo* v. *Bartolomei*, supra.

*El veredicto condenatorio será anulado, la sentencia apelada revocada y se devolverá el caso para la celebración de un nuevo juicio.*

El Juez Asociado Sr. Belaval no intervino.

---

(³) Véanse casos citados a este efecto en el de *Pueblo* v. *Díaz*, supra.