EL PUEBLO DE PUERTO RICO, peticionario y recurrente, *v.* CAYETANO BARRANCO Y JUAN BONES GONZÁLEZ, acusados y recurridos.

*Número:* CE-63-31      *Resuelto:* 24 de junio de 1965

*J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados del peticionario; *Luis F. Camacho, Jr.,* abogado de Cayetano Barranco; *Santiago C. Soler Favale,* abogado de Juan Bones González; *Justino Ferrer Muñoz, Gilberto Concepción de Gracia* y *Félix*

*Ochoteco, Hijo,* abogados del Colegio de Abogados, *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En el caso de Cayetano Barranco, la Sala de Cayey del Tribunal de Distrito, el Hon. Filiberto Santiago, Juez, le impuso una pena de tres meses de cárcel por acometimiento y agresión grave, después de un juicio en los méritos. Ante la Sala de Distrito el acusado atacó la validez de los procedimientos por el fundamento, *inter alia,* de haberse violado el debido procedimiento de ley garantizado por la Enmienda V de la Constitución de los Estados Unidos y la Sec. 7 del Art. II de la del Estado Libre Asociado de Puerto Rico; la separación de poderes consignada en el Art. I Sec. 2 de la Constitución del Estado Libre, y el derecho a un juicio imparcial y justo que tiene todo acusado.

En el caso de Juan Bones González, la Sala de Guayama del Tribunal de Distrito en sesión en Arroyo, el Hon. Filiberto Santiago, Juez, dictó sentencia condenándole al pago de $200.00 de multa o en su defecto 90 días de cárcel por infracción a la Ley de Tránsito, después de un juicio en los méritos. Al comenzar a declarar el primer testigo del Pueblo en este caso la defensa objetó todas y cada una de las preguntas hechas por el Juez que presidía por el fundamento de que en esa función actuaba como fiscal y así se violaba el debido procedimiento de ley. Solicitó que se entendieran objetadas de ahí en adelante todas y cada una de las preguntas del Magistrado. En el caso contra Barranco, antes de ser sentenciado la defensa sometió por escrito un memorial en apoyo de sus impugnaciones.

Ambos casos se apelaron ante la Sala de Guayama del Tribunal Superior. Barranco sometió el recurso a base del mismo memorial radicado en la Sala de Distrito. Bones sometió el suyo señalando como único planteamiento que el Tribunal de Distrito cometió error al actuar el Juez que

presidió como juez y fiscal. Ambos casos se decidieron por la Sala de Guayama del Tribunal Superior en una misma opinión y sentencia. La Sala revocó las sentencias apeladas y dispuso la celebración de nuevos juicios de los acusados, debiendo celebrarse "en forma compatible con los términos de esta Opinión, es decir, con la asistencia de un fiscal y ante un juez que no actúe de fiscal." A petición del Pueblo expedimos *certiorari* para enfrentarnos a la cuestión suscitada.

Se expresó así la Sala sentenciadora en su Opinión:

"En ambos casos, luego de alegar inocencia los acusados y de ser juramentados los testigos de cargo y de descargo, el juez llamó la prueba testifical de cargo, condujo el interrogatorio directo de la misma, conduciendo los abogados defensores el contrainterrogatorio correspondiente. Producida que fue la prueba testifical de defensa, el juez contrainterrogó la misma, al terminar lo cual los acusados plantearon la cuestión de que procedía su absolución por cuanto durante todo el proceso el juez había actuado de juez y de fiscal violando con ello su derecho al juicio imparcial que le garantiza la Constitución de Estados Unidos y la Constitución del Estado Libre Asociado de Puerto Rico . . . .

"En sus alegatos los apelantes plantean la cuestión de que el Tribunal sentenciador incurrió en error revocable al privarlos de un juicio justo e imparcial toda vez que el juez sentenciador que presidió la vista habida actuó en su doble capacidad de juzgador y de acusador a un mismo tiempo.

"Tienen razón los acusados y apelantes.

"Es un hecho real que el juez sentenciador actuó en la vista de los casos de autos de juez y de fiscal del modo mismo que hubiera actuado cualquier juez del Tribunal de Distrito de Puerto Rico que hubiera presidido aquella. Y es un hecho real que en los juicios de todos los casos de naturaleza penal que se ventilan en las diferentes Salas de dicho Tribunal los jueces actúan de jueces y al mismo tiempo de fiscales tantas cuantas veces un acusado alega ser inocente, excepto cuando en contadas ocasiones, a petición del denunciante, actúa un fiscal especial privado cuyos honorarios éste satisface.

"La situación apuntada es así, y lo ha sido por muchos años, no por capricho o voluntad de los jueces en cuestión, si que por mandato de un sistema elevado a jerarquía de ley que se aprobó

en 12 de marzo de 1903, según subsiguientemente enmendada y que aparece en el Título 34 L.P.R.A., secciones 58 y 59.

"Desde luego, el que los jueces de distrito estén facultados por ley a actuar de jueces y de fiscales a un mismo tiempo como precedentemente se expresa, no quiere decir que tal actuación no perjudique fundamentalmente el derecho del acusado a tener un juicio justo e imparcial ni quiere decir tampoco que los jueces sean imparciales porque al así actuar cumplen con un mandato de ley . . . .

"Si en dicho proceso penal se prescinde del fiscal y se autoriza al juez a asumir la función de éste, el juzgador deja de ser mero juez para convertirse en juez fiscal. Como tal representa al Estado, y como el mismo es parte interesada contra el acusado, el juez en su función de fiscal actúa como parte interesada contra el acusado. Esta combinación de funciones incompatibles frustra la imparcialidad del juez socavando fundamentalmente los cimientos del proceso justo a que tiene derecho el acusado. Como el juez en su rol de fiscal tiene interés activo en demostrar con la prueba que él mismo presenta y con la prueba del acusado que él controvierte y refuta que el acusado es culpable fuera de toda duda razonable, no puede en su rol de juzgador impedir que su mente, humana al fin, esté sujeta a las leyes de la ciencia sicológica y pierda en parte o por entero la noción de la imparcialidad con que debe estar revestida su delicada misión durante el proceso. ¿Cómo puede el juzgador ser imparcial y justo desdoblándose para justipreciar como fiscal la prueba de cargo y de descargo y desdoblándose a su vez por otro lado para oir también la misma prueba como juez? De ser el fallo uno de culpabilidad es un fallo maculado por el proceso inquisitorial que le ha servido de fundamento y carente del valor del fallo que es la culminación de un proceso justo e imparcial. El drama judicial celebrado es una tragedia dolorosa en que la imparcialidad del juzgador ha sido rota en mil pedazos por él mismo a virtud del ordenamiento de ley que lo inspira. La dignidad humana del acusado no ha sido respetada. Y la causa de la democracia ha sufrido un descalabro con semejante monstruosidad jurídica.

"Así de anómalo es el sistema jurídico que arranca de la expresada ley de 1903 disponiendo que los jueces del Tribunal de Distrito de Puerto Rico actúen de jueces fiscales en los casos criminales de su incumbencia cuando el acusado alega ser ino-

cente. Así de trágico es el drama judicial envuelto en cada uno de tales casos en los que se pone en fuga la imparcialidad del juzgador y se da al traste con el derecho fundamental del acusado a tener un proceso justo e imparcial. Y como no es posible el logro de un juicio imparcial y justo ante un juez que no sea imparcial y desinteresado, con el sistema jurídico en cuestión los cimientos de la causa democrática se estremecen.

"El gran jurista norteamericano Jerome Frank expresó en su libro Courts on Trial: 'La democracia sin duda ha de fracasar a menos que nuestros Tribunales juzguen los casos imparcialmente, y no puede haber un juicio imparcial ante un juez que no sea imparcial y desinteresado.'

"Cierto es que el indicado sistema inquisitorial concedía al acusado, por la ley misma de su creación de 1903, a modo de compensación de alivio, el derecho de apelar y ser juzgado ante un Tribunal Superior en juicio *de novo*. En ese juicio tenía el acusado y apelante la garantía de un proceso imparcial y justo celebrado ante un juez imparcial y desinteresado, sin la mácula de tener éste que ejercer la función de fiscal, toda vez que un funcionario, el fiscal, representaba a El Pueblo de Puerto Rico. Y aunque para conquistar el derecho a ese juicio *de novo* ante el indicado juez imparcial y desinteresado el acusado tenía que haber sido convicto y sentenciado a pena de cárcel o de multa por el juez fiscal en cuestión, por lo menos el derecho a juicio *de novo* compensaba como alivio el defecto constitucional del juicio celebrado ante el juez fiscal. Pero al aprobarse el 24 de julio de 1952 la Ley de la Judicatura desapareció tal derecho a un juicio *de novo* y en su lugar se concedió una apelación al Tribunal Superior que no autoriza celebración de juicio otro alguno, limitada tal apelación a la revisión de los procedimientos habidos en el Tribunal de Distrito. Es decir, por dicha Ley de la Judicatura se instauró el sistema del juicio criminal ante un juez fiscal del Tribunal de Distrito que priva al acusado de un juicio *de novo*.

"¿Qué juicio imparcial y justo podían esperar los apelantes ante un Tribunal de Distrito presidido por un juez fiscal que en el desempeño de su función como tal tenía empeño en probar, no en forma meramente pasiva, sí que afirmativa, que los acusados eran culpables del delito imputado a cada uno? Con el sistema del juez fiscal, eslabón que une jurídicamente a Puerto Rico con la Edad Media, no podían tener, y no tuvieron, los acusados el

juicio imparcial que garantiza la Constitución del Estado Libre Asociado de Puerto Rico . . . . [Hay una referencia a la Regla 159 (b) de las de Procedimiento Criminal de 1963].

"Preguntamos: ¿Tolerará la próxima generación sistema tan retrógrado y arcaico que permite que un juez fiscal despoje al acusado del juicio imparcial a que éste tiene derecho?

"Es inconstitucional el sistema actual de juicio criminal ante el Tribunal de Distrito en tanto en cuanto tal sistema permite que un juez actúe de juez y de fiscal a un mismo tiempo en el proceso celebrado a un acusado que alegue ser inocente, sin que actúe durante tal proceso un fiscal público o privado a nombre de El Pueblo de Puerto Rico.

"Se revocarán las sentencias apeladas y se ordenará la celebración de un nuevo juicio a cada acusado y apelante, nuevo juicio que se celebrará en forma compatible con los términos de esta Opinión, es decir, con la asistencia de un fiscal y ante un juez que no actúe de fiscal."

Aquí terminó la Sala sentenciadora.

El juez caracterizado como juez fiscal y el procedimiento caracterizado como uno no imparcial y justo son el juez y el procedimiento a que se refieren los Arts. 28 y 29 del Código de Enjuiciamiento Criminal de 1902.

El Art. 28 dispone que al ser traído el acusado a juicio si rehusare contestar o hacer alegación el juez de paz consignará la alegación de "inocente" y procederá a examinar a los testigos "con objeto de determinar por medio de la prueba testifical, si el acusado es o no culpable".

El Art. 29 dispone que si el acusado alegare su inocencia, el juez de paz procederá así: examinará bajo juramento a los testigos de cargo y a los testigos de defensa, incluyendo al acusado si éste deseare declarar y si no lo hiciere, tal circunstancia no podrá tenerse en su contra. Los testigos de cargo podrán volver para rebatir, pero no para otro objeto. El juez fallará tomando en consideración la prueba aducida, y el juicio y el fallo deberán ser en presencia del acusado, excepto en delitos que no llevan consigo depravación moral

o perversidad o cuando hay representación de abogado.([1])

No se han atacado las sentencias condenatorias y la ausencia de un juicio imparcial por el comportamiento del Juez y por hechos específicos ocurridos en estos casos en particular de los acusados. Se ha atacado y se ha condenado todo el sistema de procesamiento, como uno que está al margen del debido procedimiento de ley incapaz de producir un fallo justo e imparcial.

Siendo el sistema el que está en juicio y condenado, de él mismo debe surgir la razón de su condena. Es de rigor ineludiblemente el conocer sus frutos para estar en condiciones, con plena conciencia y con sentido de responsabilidad, de ajusticiarle o de absolverle de la imputación. Es necesario por lo tanto acudir a la única evidencia capaz de evaluarlo contra el ataque, cual es su propia manifestación, aunque lamentemos tener que incurrir en una árida exposición de números.

Dejemos al sistema que hable por sí mismo, y a la conciencia del juez de Distrito que también hable por sí misma:—

1.—En el año 1963–64, de 223,874 casos criminales dispuestos (no trasladados) se hizo alegación de culpabilidad en 134,709 dejando 89,165 en litigio para la acción del juez. De los 89,165 archivó 48,070 y quedaron 41,095 para decisión en los méritos de un juicio. De estos 41,095 el juez condenó en *11,219* casos y absolvió en *29,876*. De 89,165 casos en que no hubo alegación de culpabilidad y sí acción del juez, el Pueblo no prevaleció, archivos y absoluciones, en 77,946.

En vista de que los casos de tránsito presentan características y peculiaridades un tanto diferentes y que la prue-

---

([1]) 34 L.P.R.A. secs. 58, 59. Véase la Regla 159(b) de Procedimiento Criminal de 1963. La Ley de 10 de marzo de 1904 que reorganizó el sistema judicial creó el cargo de juez municipal (Distrito) con los deberes y funciones del juez de paz; y la Ley de 28 de mayo de 1904 dispuso que el procedimiento para la celebración del juicio en causas criminales en el juzgado municipal sería el dispuesto para los juzgados de paz. Véase *Pueblo* v. *Rivas,* 16 D.P.R. 611.

ba depende en mayor escala del testimonio de la Policía, damos por separado la situación en cuanto a tránsito:—

2.—En el año 1963–64, de 142,674 casos de tránsito dispuestos (no trasladados) se hizo alegación de culpabilidad en 98,869 dejando 43,805 en litigio para la acción del juez. De los 43,805, archivó 30,758 y quedaron 13,047 para decisión en los méritos de un juicio. De estos 13,047 el juez condenó en *3,103* y absolvió en *9,944*.

3.—Siguiendo idéntico orden de análisis los años anteriores hasta el 1953–54 señalan inalterablemente idéntico patrón de conducta y actitud del juez de Distrito:—

|  | En litigio: | Archivó: | Condenó: | Absolvió: |
|---|---|---|---|---|
| 1962–63 | 66,529 | 32,658 | 9,041 | 24,830 |
| Tránsito | 35,575 | 22,504 | 2,763 | 10,308 |
| 1961–62 | 71,986 | 32,233 | 10,660 | 29,093 |
| Tránsito | 33,476 | 20,422 | 2,433 | 10,621 |
| 1960–61 | 70,580 | 30,068 | 10,427 | 30,085 |
| Tránsito | 31,250 | 18,238 | 2,400 | 10,612 |
| 1959–60 | 54,452 | 17,143 | 10,216 | 27,093 |
| Tránsito | 15,704 | 6,075 | 1,820 | 7,809 |
| 1958–59 | 56,314 | 16,740 | 10,655 | 28,919 |
| Tránsito | 16,498 | 6,089 | 1,659 | 8,750 |
| 1957–58 | 53,528 | 17,165 | 10,391 | 25,972 |
| Tránsito | 15,860 | 5,787 | 2,038 | 8,035 |
| 1956–57 | 60,535 | 25,471 | 11,421 | 23,643 |
| Tránsito | 20,559 | 11,209 | 2,154 | 7,196 |
| 1955–56 | 52,491 | 13,992 | 12,522 | 25,977 |
| Tránsito | 14,491 | 4,839 | 2,238 | 7,414 |
| 1954–55 | 49,942 | 7,956 | 14,534 | 27,452 |
| 1953–54 | 52,134 | 9,198 | 16,449 | 26,487 |
| TOTALES: | 588,491 | 202,624 | 116,316 | 269,551 |

De 116,316 convicciones por el juez se apelaron 7,931 al Tribunal Superior. De esas 7,931 se desestimaron y desistieron 3,702. De las 4,229 consideradas en los méritos se confirmaron *2,989* y se revocaron o devolvieron *1,240*.

4.—Una comparación con el Tribunal Superior, donde El Pueblo está representado por un fiscal:—

|         | Convicciones: | | Absoluciones: | |
|---------|---------|---------|---------|---------|
|         | Jurado: | Juez: | Jurado: | Juez: |
| 1963–64 | 632 | 3,047 | 555 | 3,308 |
| 1962–63 | 450 | 2,089 | 418 | 2,588 |
| 1961–62 | 414 | 2,467 | 488 | 2,328 |
| 1960–61 | 325 | 1,811 | 385 | 1,719 |
| 1959–60 | 224 | 2,180 | 341 | 1,420 |
| 1958–59 | 279 | 1,544 | 287 | 1,095 |
| 1957–58 | 224 | 1,271 | 233 | 977 |
| 1956–57 | 263 | 1,423 | 296 | 971 |
| 1955–56 | 245 | 1,579 | 249 | 1,038 |
| 1954–55 | 287 | 1,498 | 239 | 1,048 |
| 1953–54 | 298 | 1,344 | 259 | 999 |
|         | 3,641 | 20,253 | 3,750 | 17,491 |

TOTALES: 23,894      21,241

■ Esas cifras devuelven la tranquilidad al ánimo un tanto conturbado que, naturalmente, queda con la lectura de un fallo judicial en que se estigmatiza en tonos de color subido la justicia del juez de Distrito. Las 269,551 absoluciones en 385,867 causas juzgadas en los méritos de un juicio, contra 116,316 convicciones, desmienten la existencia de un juez de Distrito cuya imparcialidad "ha sido rota en mil pedazos por él mismo" por el hecho de que interrogue a los testigos de cargo y de defensa bajo el Art. 29. Desmienten la existencia de un juez de Distrito que no ha respetado la

"dignidad humana del acusado", por el hecho de que haya tenido la función de interrogar a los testigos durante el juicio. Desmienten el hecho de que esos 385,867 procesos hayan sido una "tragedia dolorosa", y un drama judicial trágico en que los acusados no tuvieron un juicio imparcial y un juicio justo. Desmienten el hecho de que por razón del interrogatorio que le manda a hacer el Art. 29, el juez de Distrito es un "juez fiscal" que tiene "el empeño de probar", . . . en forma "sí que afirmativa", que los acusados ante él son culpables.

◼ Destruyen el hecho de que por razón del interrogatorio permisible por ley, el juez de Distrito se convierte en el juicio que preside en un fiscal con el único fin y propósito que tiene el fiscal, el de *demostrar* con la prueba que él mismo presenta y con la prueba del acusado que él controvierte que el acusado es culpable fuera de toda duda razonable" y desmienten que la imparcialidad del juzgador se haya puesto "en fuga".

Si se considera la misión del promotor fiscal cuya función y responsabilidad primordial es la de investigar y perseguir la comisión del delito y traer luego al delincuente ante el Poder Judicial para su enjuiciamiento y allí probarle su culpabilidad,(2) esas cifras demuestran que el juez de Distrito mantuvo su imparcialidad de juzgador.

La función de interrogatorio del fiscal en el curso de un juicio que puede ser desempeñada por cualquier otro abogado en representación del Pueblo—Art. 232, inc. 3, Cód. Enjuiciamiento Criminal, 34 L.P.R.A. sec. 712(3)—única que guarda relación con el mandato al juez bajo el Art. 29, no es su exclusiva gestión, ni tampoco aquella que lo define como el encargado público de investigar y perseguir el delito. Adicionarle al nombre de juez el de fiscal y atribuirle entonces por razón del Art. 29 los propósitos de éste a la vez que es

---

(2) Arts. 67–70; 95–109 según han sido enmendados, del Código de Enjuiciamiento Criminal, ed. 1935; 34 L.P.R.A. secs. 122–125; 171–183, enmendadas.

juzgador, es cuando menos una falta de reflexión comprobada por esas cifras comparativas de absoluciones después de un juicio en los méritos, y por esas cifras de archivos en que también en gran parte se pasa juicio y se usa de la discreción judicial.

Enjuiciada en sus propios frutos según se manifiestan de esos datos la judicatura de Distrito ha demostrado por sí misma la inexistencia de un juez que está imposibilitado bajo la norma jurídica o bajo "las leyes de la ciencia sicológica" de juzgar y fallar por la prueba según la aprecie y su conciencia le dicte y extender al acusado el beneficio de la duda en su posición única de juzgador desinteresado, no obstante la encomienda del Art. 29.

Si algo queda demostrado, más de 4/5 partes de todos los casos en que no hubo alegación de culpabilidad archivados o absueltos, es la posición de desventaja en que está El Pueblo en el nivel del juez de Distrito por la falta de fiscal. Si algo también queda demostrado en la proporción de absoluciones en los méritos de un juicio con las convicciones,—269,551 a 116,316—en un período en que ya está abolido el juicio *de novo*, y compárese la proporción en el Tribunal Superior donde hay fiscal que representa al Pueblo—2,762 convicciones del juez más que absoluciones—, si algo se demuestra, repetimos, es que el juez pudo no haber sido lo suficiente inquiridor en su función de interrogar por su escrúpulo de juzgador de no asumir en el juicio el papel de fiscal ausente en la judicatura de Distrito.

El cuadro de absoluciones presentado es así aun años antes de nuestra decisión en *Pueblo* v. *Toro Goyco*, que fue resuelto el 9 de febrero de 1962, 84 D.P.R. 492 (1962), cuando de ordinario el juez que fallaba había investigado la causa y ordenado el proceso, y conocía de antemano lo declarado por los testigos. Después de *Toro Goyco*, en que el juez sabe de los testigos y sus declaraciones en el momento en que se sientan a declarar en la vista en presencia del acusado legalmente

asistido, menos fundamento habría para estigmatizar la justicia del Tribunal de Distrito como una de monstruosidad jurídica que nos une a la Edad Media. (³)

No debe entenderse que insinuamos siquiera que de haber sido el resultado a la inversa, igual o mayor proporción de convicciones, declararíamos válida la impugnación. Juicios que producen condenas no son por ello menos justos e imparciales, como pueden no ser más justos por ello los que producen absoluciones. Sólo que el Derecho no funciona con abstracción de las leyes de causa y efecto de la filosofía, y como toda ciencia, demanda que el proceso deductivo sea racional y lógico.

En un sistema de impartir justicia que se condena por ser uno que produce la figura de un juez lisiado como juzgador imparcial, que al ejercer en el juicio las funciones de ley va sólo en busca de la culpabilidad del acusado, en buena lógica debían haber raras absoluciones. Es en ese único sentido, y no en ningún otro, que hemos traído las cifras comparativas, sin que se insinúe que en ésta o en cualquier otra judicatura como la Superior una proporción mayor o exceso de convicciones implique como norma la ausencia del proceso imparcial.

El error de enfoque en que incurre la Sala sentenciadora e incurren otras voces de expresión parte del concepto, mal e

---

(³) En los sistemas de procesamiento de la Europa continental hoy día normalmente es el juez quien hace todo el interrogatorio. El sistema anglo-sajón, aunque distinto, no le niega en absoluto ese derecho. Puttkammer, *Administration of Criminal Law,* (1953), págs. 199 y ss.

Hemos confeccionado los datos de las Tablas unidas a los Informes Anuales del Director de los Tribunales, Años 1953-54 al 1963-64, publicados.

Durante el período del 1ro. de julio de 1964 a marzo de 1965, no se altera el patrón. De 177,461 casos dispuestos (no trasladados) hubo 126,593 declaraciones de culpabilidad, dejando 52,868 en litigio para acción del juez. De esos archivó 26,613 y quedaron 26,255 para decisión en los méritos de un juicio. De estos 26,255 el juez condenó en *7,247* y absolvió en *19,008.*

En Tránsito: De 25,800 que quedaron en litigio archivó 16,417 quedando 9,386 para los méritos de un juicio. De estos 9,386 condenó en *2,023* y absolvió en *7,360.* Datos compilados por la Administración.

irreflexivamente acuñado, del "juez fiscal" refiriéndose al juez de Distrito. Una vez que se crea la entelequia toda la especulación urdida en torno a ella que le sigue parece ser lógica pero no lo es. Falso el concepto, falsa la especulación.

■ El cuño de "juez fiscal" proviene a la vez de un concepto falso atribuido al Art. 29. Este artículo no destruye al juzgador para poner en su lugar al fiscal con todos los propósitos de un fiscal en busca de condena. La función que le impone de interrogar no es por sí sola incompatible con la de juzgar si a dicha función no se le atribuyen indebidamente propósitos y fines que no surgen del estatuto ni pudieron ser deseados por el Legislador. El derecho de un juez a interrogar, con o sin mandato expreso, es inherente a su función misma de juzgar y está consagrado en todos los sistemas de jurisprudencia no sólo como una prerrogativa, sino como un deber en su misión de buscar y aclarar la verdad. Este Tribunal lo ha sostenido como cuestión de principio. Ha sido más exigente y ha dado acción correctiva de tipo individual en casos de ordinario ante jurado por esa situación delicada del efecto que una intervención del juez más allá de lo propio puede dar a entender al jurado su criterio sobre los hechos o sobre la credibilidad de los testigos. Igualmente debe haber corrección de tipo individual al juez de Distrito que se extravía. (⁴) Éste no es el problema institucional ante nuestra consideración.

Todavía de más importancia, el error de enfoque parte también del concepto mal entendido que sitúa la imparciali-

---

(⁴) *Pueblo* v. *Bartolomei,* 70 D.P.R. 698 (1949); *Pueblo* v. *Aletriz,* 85 D.P.R. 646 (1962); *Pueblo* v. *Matos,* 81 D.P.R. 508 (1959); *Pueblo* v. *Túa,* 84 D.P.R. 39 (1961); *Pueblo* v. *Rivera,* 71 D.P.R. 124 (1950); *Pueblo* v. *Rodríguez,* 65 D.P.R. 530 (1946); *Pueblo* v. *González,* 61 D.P.R. 347 (1943); *Pueblo* v. *Pierantoni,* 60 D.P.R. 13 (1942); *Pueblo* v. *Alvarado,* 55 D.P.R. 26 (1939); *Pueblo* v. *Montañez,* 54 D.P.R. 852 (1939); *Pueblo* v. *Saltari,* 53 D.P.R. 893 (1938); *Pueblo* v. *Quiles,* 41 D.P.R. 915 (1931); *Pueblo* v. *Tirado,* 38 D.P.R. 887 (1928); *Pueblo* v. *Acevedo,* 35 D.P.R. 966 (1926). Véase la situación en *McIntosh* v. *People of Virgin Islands,* 83 F.2d 380. La exposición en *State* v. *Keehn,* 118 Pac. 851 (Kan.).

dad del proceso en las formas externas meramente, cuando hay que buscarla donde único reside, en la conciencia sencilla y honesta del juzgador. Las formas externas niegan imparcialidad al proceso cuando impiden que toda la verdad se produzca ante el juez, porque aun con unas guías procesales malas, un juez bueno hace justicia.

Se invocan con insistencia *Toro Goyco,* ante, y *Murchison. In re Murchison,* 49 U.S. 133. No hay semejanza. *Murchison* sostiene el principio ante hechos extremos que ninguna persona debe juzgar su propia causa o la causa en que tiene interés. Un juez que en el curso de una investigación en secreto como Gran Jurado llega a la conclusión que dos personas han mentido ante él y cometido perjurio y les inicia proceso por desacato. Luego se sienta a juzgarlas. Para condenarlas tuvo que completar el récord con hechos relatados por él de lo que pasó en la cámara privada. Contra esa evidencia los convictos no tenían la oportunidad de ejercer su derecho de contrainterrogatorio.

La situación en *Toro Goyco* no era tan punzante como en *Murchison.* Quisimos, no obstante, eliminar el peligro siempre presente de que al juzgar una causa un juez de Distrito que la hubiera investigado la fallara con residuos de juicio que formara al investigarla y ordenarla, y no únicamente por la prueba desfilada en el juicio con oportunidad de ser contrainterrogada. Aun así, por las mismas cifras señaladas parece ser que en la era anterior a *Toro Goyco* el juez de Distrito normalmente falló por la evidencia del proceso.

Ninguno de esos casos estigmatiza toda la judicatura de Distrito institucionalmente como una judicatura incapaz de dar un fallo justo e imparcial.

*Se revocarán las sentencias recurridas y se devolverán los casos con la instrucción a la Sala sentenciadora que dicte otras confirmando las dictadas por las Salas de Cayey y de Guayama del Tribunal de Distrito.*