ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>MELVIN RAFAEL ROSARIO NIEVES<br><br>Recurrido | KLCE202400706 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm. C1VP2023-1633 al 1636<br><br>Sobre:<br>Art. 93 (A) CP<br>Art. 6.05 Ley 168<br>Art. 6.14 Ley 168<br>Art. 248 (A) CP |
| --- | --- | --- |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de agosto de 2024.

I.

El 3 de noviembre del 2023, el Ministerio Público presentó cuatro denuncias contra el Sr. Melvin Rafael Rosario Nieves. Le imputó infringir los artículos 93A y 248 del Código Penal de Puerto Rico,[1] así como a los artículos 6.05 y 6.14A de la Ley de Armas de Puerto Rico de 2020.[2] El 2 de diciembre de 2023, se le determinó causa probable para arresto en ausencia. En igual fecha, se encontró causa probable para arresto por los mismos hechos alegados en la denuncia contra los señores Erkin Joel Meléndez Sánchez[3] y Justin Daniel Rodríguez Sánchez[4]. En vista de que se le

---

[1] Arts. 93 y 248 del Código Penal, Ley Núm. 146-2012 (33 LPRA §§ 5142 y 5338).
[2] Arts. 6.05 y 6.14 de la Ley de Armas de Puerto Rico, Ley Núm. 168-2019 (25 LPRA §§ 466d y 466m).
[3] En lo que respecta a Meléndez Sánchez, se le fijó una fianza total de $500,000.000 que no pudo prestar, por lo que quedó sujeto a detención preventiva.
[4] En lo que respecta a Rodríguez Sánchez, inicialmente se le fijó una fianza total de $400,000.00. Sin embargo, a solicitud del Ministerio Público, el Tribunal reconsideró la fianza fijada inicialmente, impuso una fianza nominal condicionada y dejó a Rodríguez Sánchez bajo la responsabilidad de la Fiscal Quintero Hernández, para que fuese ubicado en el Albergue de Víctimas y Testigos del Departamento de Justicia.

Número Identificador

SEN2024_____

imputó la comisión de delitos graves, Rosario Nieves fue detenido el 5 de diciembre de 2023,[5] y se calendarizó un **primer señalamiento** de vista preliminar para el 20 de diciembre de 2023.

En cuanto a los coimputados Meléndez Sánchez y Rodríguez Sánchez, el primer señalamiento de vista preliminar se llevó a cabo el 18 de diciembre de 2023. Sin embargo, debido a que ambos carecían de representación legal, el Tribunal reseñaló la vista para el 17 de enero de 2024. Durante esta vista, el Ministerio Público informó que el Tribunal había logrado comunicarse con el Lcdo. Carrasquillo Viera, abogado de Rosario Nieves, y que este estuvo de acuerdo con la fecha del reseñalamiento, y que renunciaba a los términos de juicio rápido aplicables a su representado Rosario Nieves.

El 20 de diciembre de 2023, durante el **primer señalamiento** de la vista preliminar de Rosario Nieves, el Ministerio Público expresó no estar listo. El Lcdo. Carrasquillo Viera estuvo de acuerdo en pautar un segundo señalamiento de vista preliminar junto a los demás coacusados. La vista preliminar se repautó para el 17 de enero de 2024.

Llegado el día, el Ministerio Público anunció estar listo para atender la vista preliminar en los méritos con los testigos presentes anunciados en la denuncia.[6] Sin embargo, debido a la incomparecencia del Lcdo. Carrasquillo Viera[7], la vista fue recalendarizada para el 14 de febrero de 2024. Ese día, a pesar de

---

[5] Al no poder prestar la fianza total de $500,000.00 que le fue impuesta.

[6] Los testigos eran: La agente María Quiles Vélez, el agente Carlos Pérez Carrasco y el Sargento Héctor Navarro Echevarría.

[7] El 9 de enero de 2024, el Lcdo. Carrasquillo Viera presentó una *Moción Informativa y en Solicitud de Reseñalamiento de Vista* en la que informó que informó que sería sometido a una pequeña intervención quirúrgica en el Hospital Auxilio Mutuo, la cual lo obligaba a estar fuera de sus responsabilidades por aproximadamente ocho (8) días. A consecuencia de esto, solicitó que se le excusara de la vista señalada para el 17 de enero de 2024 y se reseñalara la misma para el 30, 31 de enero o para el 1, 7, 12 o 13 de febrero de 2024.

que el Ministerio Público expresó estar preparado,[8] la vista preliminar tuvo que ser pospuesta nuevamente debido a que la Lcdo. Silva Riollano, abogado de Meléndez Sánchez, se ausentó por razones médicas, y el Lcdo. Claudio Gotay, abogado de Rodríguez Sánchez, no estaba preparado para atender la vista en sus méritos. A esa fecha, el término para celebrar la vista preliminar contra Rosario Nieves vencía el 16 de febrero de 2024.

No obstante, **en aras de posibilitar que los casos se atendieran de manera conjunta**, el Lcdo. Carrasquillo Viera accedió una vez más a un reseñalamiento por estipulación en cuanto a Rosario Nieves. Puso como condición que la nueva fecha estuviera dentro del nuevo término de treinta (30) días para la celebración de vista preliminar a vencer el 15 de marzo de 2024.

Así las cosas, el Foro primario pautó un **cuarto señalamiento** de vista para el 14 de marzo de 2024. Llegado el día pautado, el Ministerio Público manifestó que estaba listo para atender la vista preliminar en sus méritos con los dos testigos presentes[9] y con "un testigo participante" cuyo nombre no reveló. Tras conferenciar en el despacho del juez, la Fiscal Quintero Hernández y los licenciados Silva Riollano y Gotay Claudio -se unió a la reunión por videoconferencia-, el Lcdo. Silva Riollano informó que el Ministerio Público le había hecho una oferta y que, necesitaría un breve receso para dialogar con su representado antes de estar en posición de informar si estaba listo para atender la vista en sus méritos.

Al culminar el receso, el Lcdo. Silva Riollano informó que necesitaría tiempo adicional para discutir con su representado con mayor profundidad la oferta del Ministerio Público, por lo que **no se encontraba listo para atender la vista preliminar en sus méritos**

---

[8] Los testigos eran: la Agente María Quiles Vélez, el Agente Carlos Pérez Carrasco y el Sr. John Félix González Pérez. En cuanto a González Pérez, la Fiscal Quintero Hernández informó que no lo habría de utilizar en etapa de vista preliminar.
[9] Los testigos eran: la Agente Quiles Vélez y el Sargento Navarro Echevarría.

**y solicitó un reseñalamiento**.[10] Esta vez, también el Ministerio Público indicó que no se encontraba preparado para atender la vista preliminar únicamente con los testigos presentes en sala. En atención a esto, solicitó que se señalara la vista para el día siguiente, cuando vencería el término contra Rosario Nieves, o en su alternativa, se concediera una nueva extensión del término para llevar a cabo la vista dentro los cinco (5) días siguientes. En esta ocasión, el Lcdo. Carrasquillo Viera se opuso a renunciar a los términos de Rosario Nieves y arguyó que el Ministerio Público no tenía certeza de proveer el testigo adicional anunciado para el día siguiente.

Así las cosas, el Tribunal de Primera Instancia desestimó las denuncias en contra de Rosario Nieves y ordenó su excarcelación. Explicó que, a pesar de que el Ministerio Público estaba facultado a enmendar la Denuncia para añadir testigos de tenerlos a su disposición, existía un término para la celebración de la vista preliminar. La inclusión de un testigo al día siguiente, de este estar disponible como testigo de El Pueblo, implicaría que la Defensa tendría derecho a un término para prepararse con respecto a dicho testigo y que el Ministerio Público no estaba preparado para la vista. En cuanto a la opción de llevar a cabo la vista al próximo día, el Tribunal adujo que sería incierto si el Ministerio Público estaría preparado, pero que, de contar con un testigo participante para declarar, lo cierto es que los términos estaban por concluir y la Defensa de Rosario Nieves no renunciaba a estos.

El 18 de marzo de 2024, el Ministerio Público presentó una *Moción en Solicitud de Reconsideración.* En esta, **reclamó al Tribunal que celebrara la vista evidenciaria exigida por la**

---

[10] Según solicitado por el Lcdo. Claudio Gotay y por el Lcdo. Silva Riollano, el Tribunal determinó que se habrían de reseñalar para otra vista los casos de los coimputados Meléndez Sánchez y Rodríguez Sánchez. La vista preliminar en cuanto a estos quedó pautada para el 2 de mayo de 2024, previa renuncia expresa de los términos.

**reglamentación vigente y emitiera posteriormente una *Resolución* en la que esbozara determinaciones de hecho y conclusiones de derecho**. El 28 de mayo de 2024, notificada el mismo día, el Tribunal emitió la *Resolución* en la que denegó la solicitud de *reconsideración* del Ministerio Público y reafirmó la desestimación y archivo de las denuncias de Rosario Nieves al amparo de la Regla 64(n)(5) de Procedimiento Criminal.

Inconforme con esta determinación, el 27 de junio de 2024, el Ministerio Público recurrió ante nos mediante C*ertiorari.* Plantea:

> El Tribunal de Primera Instancia erró al desestimar las denuncias presentadas contra el recurrido a pesar de que no había aún expirado el término dispuesto en la Regla 64 (n) de Procedimiento Criminal para la celebración de la vista preliminar.

> El Tribunal de Primera Instancia al desestimar las denuncias presentadas contra el recurrido sin tomar en consideración que las dilaciones para celebrar la vista preliminar no fueron motivadas por el Ministerio Público.

El 1 de julio de 2024, le concedimos un término de diez (10) días a Rosario Nieves para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen recurrido. El 12 de julio de 2024, Rosario Nieves presentó su correspondiente *Moción Fijando Posición en Torno a los Méritos del Recurso Instado.* Contando con el beneficio de la comparecencia de las partes, el derecho y jurisprudencia aplicable, procedemos a resolver.

II.

No hay duda de que, el derecho constitucional a juicio rápido es tan fundamental como cualquier otro derecho de entronque constitucional. Nuestra Constitución en la Sección 11 de la Carta de Derechos recoge este postulado en idénticos términos que la Constitución Federal, al disponer que "en todos los procesos criminales el acusado disfrutará del derecho a juicio rápido".[11] Todo

---

[11] Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 354; *Pueblo* v. *Cátala Morales*, 197 DPR 214, 222-223 (2017); *Pueblo* v. *Rivera Santiago*, 176 DPR 559

encausado tiene el derecho fundamental a que su juicio se celebre a la mayor prontitud posible.[12]

Corolario del aludido mandato constitucional, la Regla 64 (n) de Procedimiento Criminal,[13] incorporó la norma temporal sobre juicio rápido, así como el mecanismo reparador ante su violación.[14] En lo pertinente, la disposición señala que se podrá desestimar un pliego acusatorio, cuando:

> (n) [E]xisten una o varias de las siguientes circunstancias, a no ser que se muestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento:
> . . . .
> (3) Que el acusado estuvo detenido en la cárcel por un total de sesenta (60) días con posterioridad a la presentación de la acusación o denuncia sin ser sometido a juicio.
> . . . .
> **Se dispone que el tribunal no podrá desestimar una acusación o denuncia, bajo este inciso, sin antes celebrar una vista evidenciaria. En la vista, las partes podrán presentar prueba y el tribunal considerará los siguientes aspectos**:
> (1) Duración de la demora;
> (2) razones para la demora;
> (3) si la demora fue provocada por el acusado o expresamente consentida por éste;
> (4) si el Ministerio Público demostró la existencia de justa causa para la demora, y
> (5) los perjuicios que la demora haya podido causar.
> **Una vez celebrada la vista, el magistrado consignará por escrito los fundamentos para su determinación, de forma tal que las partes tengan la oportunidad efectiva y objetiva de evaluar, si así lo solicitan, la reconsideración o revisión de la determinación.**[15]

El interés tutelado de la transcrita disposición reglamentaria es evitar indebida y opresiva encarcelación antes del juicio; minimizar la ansiedad y preocupación que genera una acusación pública; y limitar las posibilidades de que una dilación extensa

---

[12] (2009); *Pueblo* v. *Paonesa Arroyo*, 173 DPR 203, 208 (2008); *Pueblo* v. *Guzmán Meléndez*, 161 DPR 137 (2004)*; Pueblo* v. *Ramos Ayala*, 159 DPR 788, 791 (2003).
[12] *Pueblo* v. *Custodio Colón*, 192 DPR 567, 580 (2015).
[13] 34 LPRA Ap. II R. 64 (n).
[14] *Paonesa Arroyo* v. 173 DPR, a la pág. 208.
[15] 34 LPRA Ap. II, R. 64 (n).

menoscabe la capacidad del acusado para defenderse.[16] En *Pueblo* v. *Opio Opio*,[17] nuestro más Alto Foro Judicial estableció que el derecho al juicio rápido trasciende al acto del juicio e incide en todas las etapas del proceso penal, desde la imputación inicial hasta el momento mismo en que se dicte sentencia.[18] Se activa al ponerse en movimiento procedimientos en los que la persona esté detenida o sujeta a responder ("*held to answer*")[19] y en los que podría resultar convicta por la comisión de un delito.[20]

El Tribunal Supremo de Puerto Rico adoptó los factores dictaminados por la jurisprudencia federal para evaluar si, conforme a la totalidad de las circunstancias, se ha violentado el derecho a un juicio rápido.[21] Por ello, cuando evaluamos las reclamaciones de infracciones al derecho a un juicio rápido debemos efectuar un análisis conjunto de los siguientes factores: (1) la duración de la tardanza; (2) las razones para la dilación; (3) si el acusado invocó oportunamente el derecho a juicio rápido; y (4) el perjuicio resultante de la tardanza.[22]

La Ley Núm. 281-2011[23] incorporó a las Reglas de Procedimiento Criminal los factores expuestos jurisprudencialmente. Sin embargo, añadió que, **previo a adjudicar la petición, se deberá celebrar una vista evidenciaria para examinar la prueba y considerar los factores. También decretó que la adjudicación suscrita, tiene que consignar los**

---

[16] *Pueblo* v. *Martínez Hernández*, 208 DPR 872, 906 (2022); *Pueblo* v. *Rivera Santiago*, 176 DPR 559, 570 (2009); *Pueblo* v. *Carrión Rivera*, 159 DPR 633, 640 (2003) (citando a *Pueblo* v. *Valdés et al.*, 155 DPR 781, 789 (2001)).
[17] *Pueblo* v. *García Vega*, 186 DPR 592, 606 (2012) (citando a *Pueblo* v. *Opio Opio*, 104 DPR 165, 169 (1974)).
[18] *Íd.*
[19] Se considera "sujeto a responder" desde el momento en que un magistrado determina causa probable para arresto, citación o detención de un ciudadano.
[20] *Pueblo* v. *Guzmán Meléndez*, 161 DPR 137, 152-153 (2004); *Pueblo* v. *Cartagena Fuentes*, 152 DPR 243, 248 (2000); *Carrión Rivera* v. 159 DPR, a la pág. 640.
[21] *Rivera Santiago* v. 176 DPR, a la pág. 574.
[22] *García Vega* v. 186 DPR, a la pág. 610; *Rivera Santiago* v. 176 DPR, a la pág. 574 (citando a *Guzmán Meléndez* v. 161 DPR, a las págs. 152-153; *Pueblo* v. *Candelaria*, 148 DPR 591, 598 (1999)).
[23] Ley Núm. 281-2011 que enmendó las Reglas de Procedimiento Criminal de 1963 entre ellas las aludida Regla 64, 34 LPRA Ap. II, R. 64.

**fundamentos de la determinación. Estos deben ser plasmados de forma tal que, permita a las partes una adecuada oportunidad para evaluar la determinación, así como, examinar si consideran meritorio solicitar la reconsideración o revisión del dictamen**.[24]

Particularizando los aludidos factores, en primer lugar y como requisito de umbral, para que pueda levantarse y prospere un planteamiento de violación a juicio rápido es necesaria la ocurrencia de la dilación mínima. Al respecto, en *Pueblo* v. *Guzmán Meléndez,*[25] el Tribunal Supremo aclaró que, aunque ninguno de los factores pertinentes al evaluar planteamientos de esta índole es determinante, "[s]í puede sostenerse que el primer factor -magnitud de la tardanza-, es uno de umbral, en el sentido de que se requiere una dilación mínima para activar el derecho a juicio rápido; este término sería el establecido por estatuto o reglamentación".[26] "Es decir, la dilación en exceso de los términos estatuidos por la Regla 64(n) de Procedimiento Criminal, supra, es lo que genera la necesidad de realizar el balance de los cuatro criterios mencionados".[27] Se considera un requisito *sine qua non* porque se estima que los periodos pautados en el estatuto son razonables y consistentes con los estándares constitucionales.[28] Aunque, si se suspende un señalamiento "por justa causa o por causa atribuible al imputado, los términos de juicio rápido, comienzan, nuevamente, a discurrir desde la fecha en que estuvieran las vistas señaladas".[29] No obstante, nada de ello impide que un encausado sostenga que, conforme a la protección constitucional, se ha violentado su derecho a un juicio rápido. En esas circunstancias, se requiere demostrar

---

[24] Al implementar, mediante legislación, dicho requisito, se torna innecesario para este foro tener que ejercer la autoridad provista en la Regla 83.1 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 83.1, toda vez, que una adecuada fundamentación, nos permite ejercer efectivamente nuestra función revisora.
[25] *Pueblo* v. *Guzmán Meléndez*, 161 DPR 137 (2004).
[26] *Íd.* a la pág. 155.
[27] *Pueblo* v. *Rivera Santiago*, 176 DPR 559, 575 (2009).
[28] Véase *Pueblo* v. *Valdés et al.*, 155 DPR 781, 788 (2001).
[29] *Íd.* a las págs. 791-792.

que el periodo estatutariamente establecido es irrazonable ante los hechos particulares de ese caso.[30]

Por cierto, los términos para la celebración del juicio no están sujetos a una tiesa aritmética de la regla. La administración práctica de la justicia requiere atemperar los derechos del encausado y la dilación justificada de los procedimientos.[31] Al ser los factores ponderados caso a caso y considerando la totalidad de las circunstancias, no existe un plazo fijo en la demora que amerite automáticamente la desestimación del pliego acusatorio.[32] A pesar de que, en algunos casos puede proceder la desestimación si el juicio no se celebra el último día de los términos,[33] puede ser que no se amerite, aun si el encausado ha estado encarcelado transcurridos 16 días desde el vencimiento de los términos pautados en la Regla 64 de Procedimiento Criminal.[34] La discrepancia entre los precedentes judiciales se fundamenta en que, "en la mayoría de las ocasiones, el factor decisivo para la adjudicación del balance de los criterios recae en la razón para el incumplimiento de los términos de juicio rápido".[35]

En cuanto a las razones para la demora, al evaluar la explicación para la dilación es necesario discernir el peso que se le otorgará a las explicaciones provistas. A cada pretexto, le corresponde un peso distinto, el cual dependerá de la totalidad de las circunstancias particulares del caso.[36] Por ello, es necesario cuestionar los motivos de la demora y a quién se le imputa ser el causante. "Después de todo, la dinámica de cada causa es singular y única en atención a la naturaleza de los cargos, número de

---

[30] II-2 E.L. CHIESA APONTE, DERECHO PROCESAL PENAL DE PUERTO RICO Y ESTADOS UNIDOS, § 12.1, en las págs.162-163 (1992).

[31] *Pueblo* v. *García Vega*, 186 DPR 592, 611-612, 620 (2012); *Pueblo* v. *Rivera Colón*, 119 DPR 315, 322 (1987).

[32] *Guzmán Meléndez* v. 161 DPR, a la pág. 154.

[33] *Íd.*; *Pueblo* v. *Santa-Cruz*, 149 DPR 223 (1993).

[34] *Valdés et al.* v. 155 DPR, a la pág. 788.

[35] *Pueblo* v. *García Colón I*, 182 DPR 129, 144 (2011).

[36] *Barker* v. *Wingo*, 407 US 514, 531 (1972).

testigos, el carácter de cualquier otra prueba documental o tangible. Son múltiples los elementos imponderables susceptibles de acaecer".[37]

En cuanto a si la demora fue provocada por el acusado o expresamente consentida por éste, la aludida Regla 64(n) de Procedimiento Criminal,[38] expresamente dispone que se podrá desestimar un pliego acusatorio por infracción a los términos de juicio rápido "a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento".[39] También se incluye una fraseología similar entre los factores que se deben considerar al momento de adjudicar la solicitud de desestimación.[40]

Ahora bien, la renuncia al derecho a juicio rápido deber ser expresa y no inferida, voluntaria y realizada con pleno conocimiento de las consecuencias de la renuncia.[41] No obstante, "si se trata de una táctica dilatoria en busca de ventaja para el acusado, la ausencia de objeción oportuna puede constituir una renuncia al derecho".[42] También, cuando el acusado expresamente consiente a un señalamiento posterior al vencimiento de los términos, renuncia al derecho a un juicio rápido.[43] Igualmente, se entiende declinado el derecho si el acusado no objeta un señalamiento de vista para una fecha posterior al vencimiento de los términos vigentes estatuidos en la Regla 64(n) de Procedimiento Criminal. "De igual forma, el acusado renuncia a su derecho a juicio rápido si no presenta moción de desestimación al efecto correspondiente el día de la vista".[44] En

---

[37] *García Vega* v. 186 DPR a la pág. 611 (citando a *Pueblo* v. *Rivera Tirado*, 117 DPR 419, 433 (1986)).
[38] 34 LPRA Ap. II, R. 64 (n).
[39] *Íd.*
[40] *Íd.*
[41] *Pueblo* v. *Rivera Santiago*, 176 DPR 559, 572 (2009).
[42] *Pueblo* v. *Custodio Colón*, 192 DPR 567, 582 (2015) (citando a Resumil, op. cit., Sec. 25.8, pág. 275).
[43] *Rivera Santiago* v. 176 DPR a la pág. 573.
[44] *Íd.* a las págs. 572-573 (citando a *Pueblo* v. *Rivera Arroyo*, 120 DPR 114, 120 (1987)).

esos casos, la renuncia no conlleva el abandono de su derecho "a ser juzgado más tarde dentro de un término razonable".[45]

Por consiguiente, "el derecho se invoca oportunamente cuando se hace antes de que venzan los términos".[46] Más aún, el Tribunal Supremo de Puerto Rico ha determinado que, "del propio texto de la citada Regla 64(n) de Procedimiento Criminal, ante un reclamo de un acusado de que se han excedido o que se van a exceder los términos fijados por ésta, el tribunal debe examinar si existió una causa justa para la demora o si ésta se debió a la solicitud del acusado o a su consentimiento".[47]

Como cuarto factor, el Ministerio Público tiene la obligación de demostrar que existe justa causa para la demora y "no puede descansar en meras alegaciones, generalidades o conclusiones".[48] Cuando no se provea explicación, aunque se puede presumir que la dilación no estuvo justificada, ello no implica que se haya efectuado con la intención de perjudicar a la defensa.[49] Una razón válida para la dilación en la celebración del juicio es la ausencia de un testigo esencial.[50]

Finalmente, y como último factor a examinar, el que reclama violación a su derecho a juicio rápido debe demostrar los perjuicios que la demora le haya podido causar. No se trata de cualquier perjuicio, sino uno específico, real y sustancial. El daño no puede ser abstracto ni basado únicamente en un estricto cómputo matemático.[51] Se considera que la dilación causó un claro perjuicio cuando muere o desparece un testigo, así como, "la pérdida de memoria por un testigo de la defensa".[52] Claro está, como ninguno

---

[45] *Pueblo* v. *Carrión Roque*, 99 DPR 362, 364 (1970).
[46] *Pueblo* v. *García Vega*, 186 DPR 592, 612 (2012).
[47] *Rivera Santiago* v. 176 DPR a la pág. 572.
[48] *Íd.*; *Pueblo* v. *Valdés et al.*, 155 DPR 781, 791 (2001).
[49] W.R. LaFave et al., Criminal Procedure § 18.2(c) (4th ed.).
[50] *Barker* v. *Wingo*, 407 US 514, 531-534 (1972).
[51] *Pueblo* v. *Custodio Colón*, 92 DPR 567, 583-584 (2015).
[52] *Pueblo* v. *Rivera Tirado,* 117 DPR 419, 454 n.4 (1986) (citando a *Baker* v. 407 U.S. a la pág. 582 (1972)).

de los criterios es determinante, la ausencia de perjuicio al acusado no conlleva automáticamente la denegación de la solicitud de desestimación.[53] Por ejemplo, en casos donde el Ministerio Público no demostró justa causa para la dilación, el Tribunal Supremo de Puerto Rico ha concedido la desestimación de los cargos sin exponer en la jurisprudencia si el acusado experimentó perjuicio como consecuencia de la demora.[54] Mientras que, si se ha demostrado justa causa para la demora, no se ha considerado un perjuicio que amerite conceder la desestimación de los cargos que el encausado permanezca encarcelado dieciséis (16) días transcurridos los términos pautados en la Regla 64(n).[55]

En cuanto al requisito de la especificidad del perjuicio, se ha determinado que es suficiente cuando se demuestra que "la falta de diligencia [le] causó ansiedad y preocupaciones al acusado y a su familia, además de pérdidas de ingreso por cada día que tuvo que acudir al tribunal y faltar al trabajo sin que se pudiese llevar a cabo el juicio".[56] Sin embargo, no se consideran perjuicio las generalidades típicas del proceso penal, como que, "ha experimentado un nivel de incertidumbre y desasosiego provocado por la falta de diligencia del Estado. [Así como] que [el acusado] ha estado sujeto a un fuerte escrutinio público a consecuencia de la posición que ocupa".[57] Igualmente, se han calificado como argumentos escuetos insuficientes para determinar que el encausado ha sufrido un perjuicio sustancial como resultado de la tardanza, el que haya tenido que ausentarse tres días a su trabajo.[58]

---

[53] Chiesa Aponte, *op. cit.*, pág. 151.
[54] *Pueblo* v. *Guzmán Meléndez*, 161 DPR 137 (2004); *Pueblo* v. *Carrión Roque*, 99 DPR 362, 364 (1970).
[55] *Pueblo* v. *Valdés et al.*, 155 DPR 781, 796-798 (2001).
[56] *Pueblo* v. *Santa-Cruz*, 49 DPR 223, 242 (1993).
[57] *Pueblo* v. *García Vega*, 186 DPR 592, 618-19 (2012).
[58] *Pueblo* v. *Custodio Colón*, 192 DPR 567, 593 (2015).

III.

Con este marco doctrinario como referencia, evaluemos si, como sostiene el Ministerio Público, erró el Tribunal de Primera Instancia al desestimar las denuncias contra Rosario Nieves.

A poco examinamos el expediente, notamos que el Foro *a quo* no celebró la vista que, por mandato reglamentario, estaba forzado a celebrar antes de tomar la decisión sobre si procedía o no la desestimación de las denuncias por violación a los términos de juicio rápido. A pesar de que, en la *Resolución* recurrida, el Foro *a quo* consignó una serie de fundamentos para su determinación, estos no fueron anclados en la vista evidenciaria que estaba obligado a celebrar antes de tomar su decisión.[59] Ciertamente, el Tribunal no podía desestimar las denuncias sin antes celebrar una vista, y luego consignar por escrito los fundamentos de su determinación basados en un análisis de los criterios enumerados en la Regla 64 de Procedimiento Criminal.

En la aludida vista, correspondía evaluar las razones concretas que provocaron la demora de la celebración de vista preliminar y quién fue responsable de la misma. También, debió

---

[59] Entre otros fundamentos, el Tribunal de Primera Instancia consignó que, con excepción del señalamiento del 20 de octubre de 2023, el Ministerio Público estuvo preparado para atender los señalamientos de vista preliminar pautados para el 17 de enero de 2024 y el 14 de febrero de 2024 en sus méritos y con los testigos presentes en sala que fueron previamente incluidos en las denuncias. Sin embargo, contrario a lo manifestado el 14 de marzo de 2024, en los dos señalamientos previos, el Ministerio Público no hizo la salvedad de que se encontraban preparados con los testigos presentes previamente anunciados en las denuncias y con "algún otro testigo participante", aunque fuera de manera innominada.

Expuso, que, no fue hasta que el Tribunal le cuestionó sobre la identidad del "testigo participante", que el Ministerio Público admitió no estar preparado para atender la vista preliminar en los méritos. Relató que, con posterioridad a la vista, salió a relucir que el Ministerio Público se encontraba en un proceso de acuerdo para que uno de los coacusados declarara como testigo de cargo. Sobre este particular, el Tribunal expuso que independientemente de la expectativa del Ministerio Público en cuanto a la declaración de los testigos, lo cierto era que el acuerdo para presentar el testimonio no se había concretado, y la posibilidad de que el mismo se concretara en cumplimiento con el término de juicio rápido establecido para Rosario Nieves, era sumamente remota o nula. Por último, el Tribunal esbozó que en el caso de autos no se trataba de una mera enmienda a la denuncia para añadir a un testigo del Ministerio Público, sino de comenzar una vista preliminar sin que el Ministerio Público contara con los testigos esenciales necesarios para atender la vista en sus méritos y cuya eventual disponibilidad era incierta.

considerar el perjuicio que cualquier dilación pudo haber causado en Rosario Nieves. Luego de esto, las partes estarían en posición de evaluar la necesidad, si alguna, de solicitar la reconsideración o revisión de dicho dictamen. No haber celebrado la vista evidenciaria a esos fines, nos obliga a revertir el dictamen aquí recurrido.

## IV.

Por los fundamentos antes expresados, *expedimos* el Auto de *Certiorari* y *revocamos* la *Resolución* recurrida. Devolvemos el caso al Foro de origen para que allí, se proceda a la celebración de la vista evidenciaria correspondiente, según mandata la Regla 64(n) de las de Procedimientos Criminal.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones